UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OLIVER WORKMAN,

        Petitioner,

v.                          Case No. 3:15-cv-306-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

**<u>ORDER</u>**

**I. Status**

    Petitioner Oliver Workman, a former inmate of the Florida
penal system, initiated this action on March 11, 2015, by filing a
pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under
28 U.S.C. § 2254 and a Memorandum of Law in Support of Petition
(Doc. 2). In the Petition, Workman challenges a 2010 state court
(Putnam County, Florida) judgment of conviction for Medicaid
provider fraud and grand theft. Respondents have submitted a
memorandum in opposition to the Petition. <u>See</u> Response to Petition
(Response; Doc. 7) with exhibits (Resp. Ex.). On September 11,
2015, the Court entered an Order to Show Cause and Notice to
Petitioner (Doc. 6), admonishing Workman regarding his obligations
and giving Workman a time frame in which to submit a reply. Workman
submitted a brief in reply. <u>See</u> Petitioner's Reply (Doc. 9);
Appendix (Pet. Ex.; Doc. 11). This case is ripe for review.

## II. Procedural History

On July 7, 2009, the State of Florida charged Workman with Medicaid provider fraud (count one) and grand theft over $100,000 (count two). See Resp. Ex. A at 20, Information. On July 7, 2010, Workman entered a guilty plea. See Resp. Exs. C, Transcript of the Plea Proceeding (Plea Tr.); A at 42, Pretrial Minutes. On August 18, 2010, the court sentenced Workman to a term of imprisonment of five years for Medicaid provider fraud, and to a term of imprisonment of seven years for grand theft, to run concurrently to count one, followed by ten years of probation with restitution of $485,909.07. Resp. Exs. A at 46, 47-51, 54-65; C, Transcript of the Sentencing Proceeding. During the sentencing hearing, Workman filed a written statement. See Resp. Ex. A at 52.

On direct appeal, Workman, with the benefit of counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and a motion to withdraw as counsel. See Resp. Ex. D at 1-12, 13-14. The State filed a notice that it did not intend to file a brief. See id. at 16-17. On May 3, 2011, the appellate court affirmed Workman's conviction and sentence per curiam, see Workman v. State, 60 So.3d 1075 (Fla. 5th DCA 2011); Resp. Ex. D at 18, and mandate issued on May 25, 2011, see Resp. Ex. D at 20.

Workman filed a pro se motion for post-conviction relief (Rule 3.850 motion) pursuant to Florida Rule of Criminal Procedure 3.850 on April 29, 2011. See Resp. Ex. E at 1-27. In his Rule 3.850

motion, he asserted that counsel (Wade M. Rolle) was ineffective because he failed to: protect his civil, constitutional and human rights when the trial court erred (ground one); file a direct appeal (ground two); conduct a pretrial investigation (additional claim); present any evidence relating to the possibility that Workman could have paid back the money in a brief amount of time (additional claim); and make any statements or arguments after the court imposed the sentence (additional claim). Additionally, Workman states that counsel was ineffective because he: represented him under a conflict of interest (ground three); made a false and misleading promise that resulted in an involuntary plea (ground four); denied him a probable cause hearing and a fair and impartial hearing (ground five); overlooked a <u>Brady</u>[1] violation (ground six); and subjected him to cruel and unusual punishment due to his misrepresentation, conflict of interest, and misconduct (ground seven). The State responded, <u>see id.</u> at 63-65, and Workman replied, <u>see id.</u> at 82-116. On March 28, 2012, the post-conviction court denied the Rule 3.850 motion as to  grounds one, two, three, five, six, seven, and Workman's additional claims, and set an evidentiary hearing on ground four. <u>See id.</u> at 117-21. The court held an evidentiary hearing on March 14, 2012, <u>see id.</u> at 180; denied the Rule 3.850 motion as to ground four, <u>see id.</u> at 135-38; and later denied Workman's motion for rehearing, <u>see id.</u> at 158-62, 165. On

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

appeal, Workman filed an initial brief, <u>see</u> Resp. Ex. F at 1-18; the State filed an answer brief, <u>see</u> <u>id.</u> at 19-30; and Workman filed a reply brief, <u>see</u> <u>id.</u> at 31-48. On June 4, 2013, the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>Workman v. State</u>, 114 So.3d 955 (Fla. 5th DCA 2013); Resp. Ex. F at 49, and the mandate issued on June 28, 2013, <u>see</u> Resp. Ex. F at 50.

On August 16, 2013, Workman filed a pro se motion to mitigate, reduce, or modify sentence under Florida Rule of Criminal Procedure 3.800(c) (Rule 3.800(c) motion). <u>See</u> Resp. Ex. G at 1-8. The court denied the Rule 3.800(c) motion on September 6, 2013. <u>See</u> <u>id.</u> at 9.

On November 22, 2013, Workman filed a pro se motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) (1st Rule 3.800(a) motion). <u>See</u> <u>id.</u> at 10-16. In the 1st Rule 3.800(a) motion, Workman asserted that the trial court's imposition of "dual sentences for the two offenses" was a violation of double jeopardy. <u>Id.</u> at 13. The court denied the 1st Rule 3.800(a) motion on December 17, 2013. <u>See</u> <u>id.</u> at 18. Workman filed a motion to correct the court's order. <u>See</u> <u>id.</u> at 19-28. He asserted that the court mistakenly stated he entered into a negotiated plea on several counts when he had actually entered an open plea on two counts, which entitled him to raise a double jeopardy claim. After

a hearing on April 14, 2014,[2] the court entered an amended order denying Workman's 1st Rule 3.800(a) motion, stating in pertinent part:

> THIS MATTER came before the Court on the defendant's pro se Motion to Correct Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). The defendant asserts that he was unlawfully subjected to double jeopardy. The defendant entered into an open plea on two (2) counts, including a first degree felony. On the first degree felony, the defendant was sentenced to 7 years of incarceration followed by 10 years of probation. The remaining felony involved a concurrent and lesser sentence. There is simply no merit to the defendant's claim.

Id. at 29 (emphasis deleted). Workman did not appeal the court's denial of his 1st Rule 3.800(a) motion.

On December 5, 2013, Workman wrote a letter, dated December 2nd, to Judge Mendoza. In the letter, he asked for modification of his sentence and referred to the court's denial of his first Rule 3.800(c) motion. See id. at 15-16. The court construed the letter as a second Rule 3.800(c) motion, and denied it on December 17, 2013. See id. at 17.

On June 26, 2014, Workman filed a second motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure

---

[2] See Response to Motion to Supply Transcript of Evidentiary Hearing (Doc. 14), at 1 (stating "it would appear that the trial judge simply let Workman orally argue his double jeopardy claim" because no witnesses were called, and no evidence was presented at the April 14, 2014 hearing); see also Doc. 14 at 6, Motion Hearing Minutes; Pet. Exs. B; C.

3.800(a) (2nd Rule 3.800(a) motion). <u>See</u> <u>id.</u> at 30-59. On August 20, 2014, the trial court denied the 2nd Rule 3.800(a) motion, stating in pertinent part:

> THIS MATTER came before the Court on the Defendant's most recent pro se Motion to Correct Sentence filed pursuant to Florida Rule of Criminal Procedure 3.800(a). Specifically, the Defendant claims that he is being illegally detained in the Florida Department of Corrections because his constitutional rights to not be charged twice for the same offense ha[ve] been violated and thus the Defendant should be released immediately from prison.
>
> The Defendant has filed virtually the same Motion twice and an evidentiary hearing was held on the matter on April 14, 2014. The Defendant's Motion was denied. (See Appendix A).
>
> The Defendant's latest Motion is successive.

<u>See</u> <u>id.</u> at 60 (emphasis deleted). Workman filed a notice of appeal, <u>see</u> <u>id.</u> at 63, and motion for rehearing, <u>see</u> <u>id.</u> at 65-68, on September 3, 2014. The court denied his motion for rehearing on September 15, 2014. <u>See</u> <u>id.</u> at 69. On appeal, Workman filed an initial brief, <u>see</u> <u>id.</u> at 70-84, and the State notified the court that it did not intend to file an answer brief, <u>see</u> <u>id.</u> at 85-86. On November 10, 2014, the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>Workman v. State</u>, 152 So.3d 594 (Fla. 5th DCA 2014); Resp. Ex. G at 87, and denied his motion for rehearing on December 15, 2014, <u>see</u> Resp. Ex. G at

88-91, 92. The mandate issued on January 5, 2015. <u>See</u> Resp. Ex. G at 93.

On January 2, 2015, Workman filed a pro se motion to correct manifest injustice and miscarriage of justice pursuant to Florida Rule of Criminal Procedure 3.800(a) (3rd Rule 3.800(a) motion). <u>See</u> Resp. Ex. H at 1-7. In the 3rd Rule 3.800(a) motion, Workman asserted that the court, in prior orders, never ruled on the merits of his double jeopardy claim. The court denied the motion on January 14, 2015. <u>See</u> <u>id.</u> at 8. Workman did not appeal the court's denial of his motion.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 2245 (2017). "It follows that if the record

refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Workman's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on

the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, --, 133 S.Ct. 1088, 1096 (2013).[3] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence

---

[3] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Johnson, 133 S.Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Johnson, 133 S.Ct. at 1096.

presented in the State court proceeding." 28 U.S.C. § 2254(d);

Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

10

> conclusion in the first instance.'"[4] <u>Titlow</u>,
> 571 U.S. at ---, 134 S. Ct. at 15 (quoting
> <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct.
> 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>.
<u>denied</u>, 137 S.Ct. 2298 (2017); <u>see also</u> <u>Daniel v. Comm'r, Ala.</u>
<u>Dep't of Corr.</u>, 822 F.3d 1248, 1259 (11th Cir. 2016). Also,
deferential review under § 2254(d) generally is limited to the
record that was before the state court that adjudicated the claim
on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011)
(stating the language in § 2254(d)(1)'s "requires an examination of
the state-court decision at the time it was made"); <u>Landers v.</u>
<u>Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1295 (11th Cir. 2015)
(regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is
"'unaccompanied by an explanation,' a petitioner's burden under
section 2254(d) is to 'show[] there was no reasonable basis for the
state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting
<u>Richter</u>, 562 U.S. at 98). Thus, "a habeas court must determine what
arguments or theories supported or, as here, could have supported,
the state court's decision; and then it must ask whether it is
possible fairminded jurists could disagree that those arguments or
theories are inconsistent with the holding in a prior decision of

---

[4] The Eleventh Circuit has described the interaction between
§ 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y</u>
<u>Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>,
137 S.Ct. 1103 (2017).

[the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at 1239; see Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), petition for cert. filed, No. 17-512 (Sept. 29, 2017).[5] However, in Wilson, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico,[6] 559 U.S. at 773, 130 S.Ct. 1855 (quoting Visciotti,[7] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," Donald,[8] 135 S.Ct. at 1376 (quoting Visciotti, 537 U.S. at 24, 123 S.Ct. 357).

Id. at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state

---

[5] Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

[6] Renico v. Lett, 559 U.S. 766 (2010).

[7] Woodford v. Visciotti, 537 U.S. 19 (2002).

[8] Woods v. Donald, 135 U.S. 1372 (2015).

court." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). "This standard is 'meant to be' a difficult one to meet." <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 864 F.3d 1261, 1274 (11th Cir. 2017) (quoting <u>Richter</u>, 562 U.S. at 102). Thus, to the extent that Workman's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See,

> e.g., <u>Coleman</u>,[9] <u>supra</u>, at 747-748, 111 S.Ct.
> 2546; <u>Sykes</u>,[10] <u>supra</u>, at 84-85, 97 S.Ct.
> 2497.   A  state  court's  invocation  of  a
> procedural rule to deny a prisoner's claims
> precludes  federal  review  of  the  claims  if,
> among  other  requisites,  the  state  procedural
> rule  is  a  nonfederal  ground  adequate  to
> support the judgment and the rule is firmly
> established  and  consistently  followed.  <u>See</u>,
> e.g., <u>Walker v. Martin</u>, 562 U.S. --, --, 131
> S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011);
> <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S.Ct.
> 612,  617-618,  175  L.Ed.2d  417  (2009).  The
> doctrine barring procedurally defaulted claims
> from  being  heard  is  not  without  exceptions.  A
> prisoner  may  obtain  federal  review  of  a
> defaulted  claim  by  showing  cause  for  the
> default  and  prejudice  from  a  violation  of
> federal  law.  <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented  [him]  from  raising  the  claim  and
> which cannot be fairly attributable to his own

---

[9] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[10] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639).[11] Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v.</u>

---

[11] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

<u>Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v.</u>
<u>Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,'
a claim of actual innocence must be based on reliable evidence not
presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998)
(quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such
evidence, in most cases, allegations of actual innocence are
ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Double Jeopardy Clause

The Eleventh Circuit has stated:

> "The Double Jeopardy Clause of the Fifth
> Amendment provides that no person shall be
> 'subject for the same offence to be twice put
> in jeopardy of life or limb.'" <u>Jones v.</u>
> <u>Thomas</u>, 491 U.S. 376, 380, 109 S.Ct. 2522,
> 2525, 105 L.Ed.2d 322 (1989) (quoting U.S.
> Const., amend. V). In addition to protecting
> against multiple prosecutions for the same
> offense, the Clause also prohibits "multiple
> punishments for the same offense imposed in a
> single proceeding." <u>Id.</u> at 381, 109 S.Ct. at
> 2525 (internal quotation marks omitted).
>
> In the context of multiple punishments,
> the purpose of double jeopardy is simply to
> "ensur[e] that the total punishment did not
> exceed that authorized by the legislature."
> <u>Id.</u> (quoting <u>United States v. Halper</u>, 490 U.S.
> 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d
> 487 (1989)); <u>Missouri v. Hunter</u>, 459 U.S. 359,
> 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983)
> ("[T]he Double Jeopardy Clause does no more
> than prevent the sentencing court from
> prescribing greater punishment than the
> legislature intended."). Therefore, in
> enforcing the federal double-jeopardy
> guarantee, we "must examine the various
> offenses for which a person is being punished
> to determine whether, as defined by the
> legislature, any two or more of them are the

same offense." <u>United States v. Dixon</u>, 509
U.S. 688, 745, 113 S.Ct. 2849, 2881, 125
L.Ed.2d 556 (1993). In effect, we ask whether
the offenses are "sufficiently distinguishable
to permit the imposition of cumulative
punishment." <u>Id.</u> at 745, 113 S.Ct. at 2881–82
(quotation marks omitted). Where no clear
legislative intent has been expressed, we
apply the "same-elements test" of <u>Blockburger</u>,
which provides that two statutes are not the
"same offense" for purposes of double jeopardy
if "each provision requires proof of a fact
which the other does not." <u>Blockburger</u>, 284
U.S. at 304, 52 S.Ct. at 182.[12]

<u>Stoddard v. Sec'y, Dep't of Corr.</u>, 600 F. App'x 696, 703–04 (11th

Cir. 2015) (per curiam) (footnote omitted), <u>cert</u>. <u>denied</u>, 136 S.Ct.

114 (2015).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Workman asserts that the state trial court

never ruled on the merits of his double jeopardy claim, which

resulted in a miscarriage of justice. <u>See</u> Petition at 5. He states:

> [Rule] 3.800(a) post-conviction motion was
> never adjudicated on the merits. There were
> substantive rights for the 3.800(a) motion
> after the trial court corrected the wrong
> information submitted by them. The trial court
> denied the motion based on wrong information
> submitted by them. All denied motions (2) were
> ... with no authority citation. The second
> [Rule] 3.800(a) [motion] was indicated as
> successive when there was no legal restriction
> indicated as to what made it successive[.] The
> trial court initially denied the [Rule]
> 3.800(a) [motion] based on wrong information
> that the petitioner had entered a negotiated

---

[12] <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).

18

> plea when it was not. It was, when corrected
> by the trial court, an open plea to the mercy
> of the court which made it with substantive
> rights to be challenged as [a] violation of
> double jeopardy rights. No refute from the
> record[.]

Id. Workman raised the claim in his 3rd Rule 3.800(a) motion. See

Resp. Ex. H at 1-7. The state court denied the motion, stating in

pertinent part:

> THIS MATTER came before the Court on the
> Defendant's pro se Motion to Correct Manifest
> Injustice and Miscarriage of Justice . . .
> filed pursuant to Florida Rule of Criminal
> Procedure 3.800(a). The Defendant again claims
> a double jeopardy violation and claims that
> the prior Order claiming the Defendant's
> identical claim in past Motions was successive
> was a miscarriage of justice because a prior
> Order that resulted in a denial . . . was not
> based on the merits.
>
> Attached as Collective Appendix A, are
> the past Orders from the Court denying the
> Defendant's claim on the merits and the
> Defendant's Appeal along with a copy of a
> Mandate affirming the lower Court's decision.

Id. at 8 (emphasis deleted). Workman did not appeal the court's

denial of the 3rd Rule 3.800(a) motion. Respondents contend that

the claim is procedurally barred since Workman failed to appeal the

court's denial. See Response at 5-9. On this record, the Court

agrees that the claim has not been exhausted, and is therefore

procedurally barred since Workman failed to raise the claim in a

procedurally correct manner. Workman has not shown either cause

excusing the default or actual prejudice resulting from the bar.

Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.[13]

Even assuming that Workman's claim is not procedurally barred, he is not entitled to relief. To the extent that the state court adjudicated his claim of manifest injustice on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Workman is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference, Workman's claim is, nevertheless, without merit. Respondents contend, see Response at 10, and this Court agrees, that the claim presents an issue purely of state law not cognizable on federal habeas review. In essence, he challenges the state trial judge's rulings on his Rule 3.800(a) motions. The purpose of a federal habeas proceeding is to review

_____

[13] Workman entered a plea of guilty, see Plea Tr. at 26; Resp. Ex. A at 42, and confessed to his unlawful behavior in a written statement at sentencing, see Resp. Ex. A at 52.

the lawfulness of Workman's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[14] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). Workman's conviction and sentence do not violate the Constitution or laws or treaties of the United States. Thus, Workman is not entitled to federal habeas relief on ground one.

### B. Ground Two

As ground two, Workman asserts that the State of Florida charged him twice for the same criminal conduct in violation of the Double Jeopardy Clause of the Fifth Amendment. <u>See</u> Petition at 7. He states:

> The charges of Medicaid Provider Fraud and Grand Theft resulted from the same conduct/act. No separate act/conduct was done to create the two charges as occurring separately. In order for the Grant Theft to be, Medicaid Provider Fraud had to occur. When Medicaid Provider Fraud was committed so was the Grand Theft. The Grand Theft was the necessarily lesser charge. [The] Grand Theft conviction cannot stand, as it did not involve a separate and distinct criminal episode from Medicaid Provider Fraud. The Grand Theft charge should be vacated and the Medicaid Fraud should be affirmed by the court.

<u>Id.</u> Workman raised the claim in his 1st Rule 3.800(a) motion, and the state court denied the motion on the merits; he did not appeal

---

[14] Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.

the court's denial. He raised the claim again in his 2nd Rule 3.800(a) motion; the state court denied the motion as successive; and the appellate court affirmed the court's denial per curiam. Respondents contend that the claim is procedurally barred. <u>See</u> Response at 7 ("[D]ue to his failure to appeal from the denial of the first motion and the affirmance of the ruling as to the second motion[,] Workman has procedurally defaulted . . . ."). On this record, the Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Workman failed to raise the claim in a procedurally correct manner. Workman has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Workman's claim is not procedurally barred, he is not entitled to relief. To the extent that the state court adjudicated his claim on the merits when it denied his 1st Rule 3.800(a) motion, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's

adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Workman is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference, Workman's claim is, nevertheless, without merit. The State of Florida charged Workman with two criminal offenses: Medicaid provider fraud and grand theft. See Resp. Ex. A at 20. The Information states:

> R.J. LARIZZA, State Attorney for the Seventh Judicial Circuit of the State of Florida and as such prosecuting attorney for this Court, in the name of and by the authority of the State of Florida charges that:
>
> COUNT I: IN THAT OLIVER WORKMAN[,] on or about January 3, 2003, in the County of PUTNAM and State of Florida, did knowingly make, cause to be made or aid and abet in the making of any false statement or false representation of a material fact, by commission or omission, in any claim submitted to the agency or its fiscal agent for payment contrary to Florida Statute 409.920(2)a. (3 DEG FEL)[15]

---

[15] Florida Statutes section 409.920(2)(a) provides:

A person may not:

1. Knowingly make, cause to be made, or aid and abet in the making of any false statement or false representation of a material fact, by commission or omission, in any claim submitted to the agency or its fiscal agent or a managed care plan for payment.

> COUNT II: IN THAT OLIVER WORKMAN, on or about
> January 3, 2003, in the County of PUTNAM and
> State of Florida, did knowingly obtain or use,
> or endeavor to obtain or use US Currency of a
> value of $100,000.00 or more, which was the
> property of, or any other person not the
> defendant(s) of the property or benefit
> therefrom or to appropriate the property to
> the use of OLIVER WORKMAN or to the use of any
> person not entitled thereto, contrary to
> Florida Statute 812.014(1)(2)(a)1. (1 DEG
> FEL)[16]

Id. Notably, the State of Florida charged each criminal offense under a separate statute. Medicaid provider fraud and grand theft each require proof of an element that the other does not. Medicaid provider fraud requires the making of a false statement or false representation of a material fact; grand theft does not. Grand theft requires a taking of another's property; Medicaid provider fraud does not. Moreover, neither Medicaid provider fraud nor grand theft is a lesser-included offense of the other offense. The

---

[16] Florida Statutes section 812.014(1) provides:

> A person commits theft if he or she knowingly
> obtains or uses, or endeavors to obtain or to
> use, the property of another with intent to,
> either temporarily or permanently:

> (a) Deprive the other person of a right to the
> property or a benefit from the property.

> (b) Appropriate the property to his or her own
> use or to the use of any person not entitled
> to the use of the property.

Florida Statutes section 812.014(2)(a)1. states: "If the property stolen is valued at $100,000 or more . . . ."

24

criminal acts are of a separate character and type requiring different elements of proof, and are codified in separate statutes. As such, punishment for these distinct criminal acts does not violate double jeopardy. See Blockburger v. United States, 284 U.S. 299 (1932); McKinney v. State, 66 So.3d 852 (Fla. 2011); Fla. Stat. § 775.021(4)(a) (Florida's codification of the Blockburger test). Therefore, Workman is not entitled to federal habeas relief as to ground two.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Workman seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Workman "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Workman appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of October, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 10/20
c:
Oliver Workman
Counsel of Record